## UNITED STATES *v.* GENNERT (No. 2814)[1]

EVIDENCE—MISSING EXHIBIT.

Importer appealed to reappraisement by a general appraiser and the Government applied for a review of the reappraisement. Before the general appraiser was an affidavit, introduced by importer, admitted in evidence, and marked Exhibit 2. This exhibit, though transmitted to the board, was not to be found at the trial, and is not in the record in this court. The board asked the Government if it wished a remand, and received a negative reply. Although it would have been entirely proper for the board to have remanded the case, *sua sponte*, if by so doing it believed justice would have been served, its affirmance of the reappraisement as being supported by, and not contrary to, what evidence was in the record, is affirmed.

United States Court of Customs Appeals, March 9, 1927

APPEAL from Board of United States General Appraisers, Circular Reappraisement 36540

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Peter A. Abeles*, special attorneys, of counsel), for the United States.
*John R. Rafter* (*Harry M. Farrell* of counsel) for appellee.

[Oral argument January 25, 1927, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves a reappraisement of an importation of catalogues which were invoiced at 3 *marks* each, case included. The entered value was the same. The appraised value was 15 *marks* each, plus cases.

---

[1] T. D. 42059.

The importer appealed to reappraisement and before the single general appraiser Exhibit 1, the official sample, together with an affidavit and its translation were offered by the importer, and received in evidence. The Government introduced in evidence a report of the United States customs attaché, which was accompanied by letters, statements, and photographs chiefly concerned with the cost of production of the importation.

According to the statements of counsel, at the trials and in the briefs filed here, it seems that the merchandise, which consisted of catalogues illustrative of merchandise for sale in Germany, were not sold in Germany but were given away free. The catalogues were furnished to appellee by *Contessa-Nettel A. G.* Since they were not sold in Germany but were given away, such record as appears before us would indicate that there was no foreign wholesale value of the merchandise which could be ascertained, and that the single general appraiser attempted to determine the cost of production under subdivision E, section 402, of the Tariff Act of 1922.

Such evidence as is before us indicates that 4.50 *marks* each was all the catalogues cost *Contessa-Nettel.* In the evidence before us there is no showing as to the cost of materials, or plates, or general expense, or profit, it evidently being the contention of the importer that, in determining the cost of production, the only thing to be considered was what it cost *Contessa-Nettel,* who furnished the same free of charge to appellee. The record is in some conflict as to the exact amount which the printing cost. The Government admits that the presswork alone cost 4.50 *marks* and the importer's counsel at the trial stated that 4.50 *marks* was all it cost the shipper *Contessa-Nettel* to get out the catalogues, since they already had the plates and since the paper came to them free. In another place in the record importer concedes the cost to be 4.53 *marks.*

The reappraisement decision of the single general appraiser is as follows:

This appeal from the finding of the United States appraiser at the port of New York having come on to be heard, after due notice having been given to the parties in interest of the time and place of hearing.

I find, after having proceeded according to the law governing such appeals, upon the evidence and the facts disclosed by the record made before me, that the actual dutiable value or wholesale price of the merchandise at the time of exportation in the principal markets of the country from whence exported, was as follows: Printed matter, each, marks 4.50, packed.

And I do hereby find the dutiable value of such merchandise accordingly.

The Government appealed to the Board of United States General Appraisers (now United States Customs Court), which, according to the record of proceedings before it, attempted to learn the different items of cost of the catalogues. The Government, there, insisted that it was not incumbent upon it to produce the items of cost, that this

burden was upon the importer before the single general appraiser, since the value found by the United States appraiser of 15 *marks* was presumed to be correct until successfully assailed by the importer.

The remarks of at least one of the judges hearing the case in the review before the board, would indicate that the court regarded it as the duty of the Government to produce affirmative evidence as to the cost of the various items, in the trial before the single general appraiser. The record before us discloses that the affidavit introduced by the importer, before the single general appraiser and marked Exhibit 2, was, upon appeal by the Government, transmitted to the Board of General Appraisers. No reference to Exhibit 2 was made in the hearing before the board, but in the "Decision of the Board" the absence of Exhibit 2 is noted in the following language:

Admittedly, the cost of the paper was not included in the invoice price. It is shown the presswork is 4.5 marks for each paper book.

The record discloses an affidavit was offered by the importer, and marked "Exhibit 2." The Government offered in evidence a special agent's report. On this record the case was submitted. We do not find the affidavit with the papers. A search in the office of the clerk of the reappraisement division failed to obtain this item of testimony. Parties appealing their causes should see that, on submission to the appellate tribunal, the record is complete, and that all the papers on which the cause was tried are included in the record. It is not the board's duty to search for missing exhibits. Would counsel submit such a record to the Court of Customs Appeals?

We probably could well order the dismissal of this record, as not containing the evidence upon which the single general appraiser acted. We will not do so in this case, but it is not to be considered a precedent.

The special agent's report does not disclose the cost of the paper or the cuts. All we have is the cost of printing. It matters not if the exporter refused to show the cost of the paper. There was a way to ascertain this cost. The Government insists we must find that the paper costs something. Admit this contention. Is the board to guess at this cost? Is this establishing a fact by satisfactory evidence? Our guess would not be any better than that of the court below.

We are examining this record to determine whether there was testimony to sustain the judgment entered. We find there is such testimony. There being such testimony we must sustain the judgment. The judgment is not against the weight of the testimony. We can not presume a certain judgment would be found on other testimony.

The Government was asked if it wished a remand of this case. Counsel replied "No," thereby implying that all the testimony obtainable was in the record.

On this record we affirm the judgment of the single general appraiser.

In this court it is contended, by the Government, that there was no evidence before the single general appraiser, or before the Board of General Appraisers, establishing the incorrectness of value found by the United States appraiser; that there was, therefore, no evidence to sustain the finding of the board, and that its judgment must be reversed. It is also the contention of the Government that the single general appraiser found foreign market value, as the dutiable value, rather than cost of production, as the dutiable value, and

that there is not "one scintilla" of evidence in the record as to foreign market value, since it is conceded that the merchandise was given away free.

Without the affidavit, Exhibit 2, which was before the single general appraiser, we can not say that there was no evidence showing foreign market value, or, for that matter, showing the entire cost of production to be only 4.50 *marks*. To that extent we find ourselves in the same position as that occupied by the board in reviewing the action of the single general appraiser, and it is obvious that this court can not reverse the board for the same reason that it could not reverse the single general appraiser.

Before the board, the Government's counsel was asked, "Do you want the case remanded?" and he replied, "No; I don't want the case remanded. I think that the appraised value is correct." If the case had been remanded, the Government would have found itself in the same position it was in when it entered the hearing before the single general appraiser, and could, there, have insisted as it did before, that it was incumbent upon the importer to first assail the United States appraiser's value. The Government can not dodge the responsibility which came to it in this way, in what might be regarded as an opportunity offered it, to try to complete the record. The Government was here offered a good opportunity to make a proper motion for completion of the record, and, since it was the appellant, we think it should have done so. In fairness to the Government's counsel, however, the record would seem to indicate that if the case had been remanded, it would have been upon the theory that when so remanded the Government must produce evidence supporting the appraiser's finding, and the Government, rather than the importer, would be required to assume the burden.

We think the court, in this kind of case, has certain duties to perform itself, and that it would have been entirely proper for it to have remanded the case, if in so doing it believed substantial justice between the parties could have been brought about. But, due in part to the attitude of the Government before the Board of General Appraisers, we find ourselves, as the board, found itself, without a complete record, and we can not, therefore, say what, if any, evidence was before the single general appraiser showing either wholesale foreign market value or cost of production.

We note the printed form upon which the single general appraiser has made his "Reappraisement decision." While it purports to be prepared subsequently to the passage of the Tariff Act of 1922, it would seem to be an unsatisfactory form to be used where the cost of production was the value to be determined, and leaves indefiniteness and doubt as to what kind of value was really found by the single general appraiser. If printed forms are to be used in the work of the

United States Customs Court, care should be exercised to select a proper one.

We find no error of law in this record, and the judgment of the Board of General Appraisers (now United States Customs Court), is *affirmed*.